UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL G. BENSCOOTER,

      Plaintiff,

v.                    Case No: 5:14-cv-144-Oc-29PRL

FNU SOUTHALL, Reg. Nurse,
FNU NEWLAND, Doctor, FNU
PEREZ,            Medical
Administrator, FNU MORALES,[1]
Physician Assistant, and
TAMYRA JARVIS, Warden,

      Defendants.

_____

**OPINION AND ORDER**

**I.**

      This matter comes before the Court upon review of Defendants'
motion for summary judgment (Doc. #27).  Attached to Defendants'
motion are the following supporting exhibits: copies of
Plaintiff's pertinent medical records (Docs. #27-1 through #27-2,
Exh. 1-A and Exh. 1-B, hereinafter "Exh. 1"); Declaration of Tamyra
Jarvis, the "Complex Warden" at FCI Coleman, with supporting
documentation (Doc. #27-3, Exh. 2, hereinafter "Decl. Warden");
Declaration of Minerva Perez, the "Health Services Administrator"

---

[1]Defendants note that Plaintiff incorrectly spelled Defendant
"Moralez" last name.  See Motion at 1, n.1.  The typographical
error has been corrected to reflect the proper spelling of
Defendant's name to "Morales."  The Clerk of Court will be directed
to edit the docket accordingly.

at FCI Coleman (Doc. #27-4, Exh. 3, hereinafter "Decl. Perez"), and Declaration of Marcia Southall, registered nurse at FCI-Coleman (Doc. #27-5, Exh. 4, hereinafter "Decl. RN").

Plaintiff has not filed a response to Defendants' motion despite being granted several enlargements of time. See Doc. #29 (granting thirty day enlargement of time noting that at this point Plaintiff had almost ninety days to respond), Doc. #31 (granting thirty day enlargement of time), Doc. #33 (granting one final ten-day enlargement of time). Because Plaintiff has failed to address Defendants' assertions of fact as required under Fed. R. Civ. P. 56(c), the Court will consider the facts asserted by Defendants in their respective motions and contained in their supporting documents to be undisputed. Fed. R. Civ. P. 56(e). For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

## II.

Plaintiff Michael Benscooter, a federal inmate, initiated this action proceeding *pro se* by filing a Prisoner Civil Rights Complaint Form (Doc. #1, Complaint). The Complaint, filed under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (11th Cir. 1971), alleges a violation of Plaintiff's Eighth Amendment rights under the United States Constitution stemming from incidents that occurred while he was incarcerated at Coleman FCI. Specifically, the cause of action arose after Plaintiff underwent surgery on his

urethra to remove scar tissue at Leesburg Medical Center around February 17, 2013.  Complaint at 10.

Defendants Southall, Newland, and Morales (hereinafter "medical defendants") were all involved in the provision of medical care to Plaintiff at Coleman FCI.  The medical defendants move for summary judgment and point to supporting evidence to show that they did not act with deliberate indifference to Plaintiff's serious medical condition immediately after he underwent surgery. With regard to the incidents subsequent to the initial care after surgery, the medical defendants argue that Plaintiff's general complaints of pain did not present a serious medical condition. The medical defendants further argue that even if the entire situation posed a serious medical condition, the record shows that they did not act with deliberate indifference.

Defendants Jarvis and Perez move for summary judgment and argue that they were not "personally involved" in the provision of medical care to Plaintiff.  Instead, Jarvis and Perez submit that they were "administrators" and are sued solely on the theory of vicarious liability.

### III.

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (internal quotations and citations

omitted).  See also Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."  Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial."  Beard v. Banks, 548 U.S. 521, 529 (2006) (citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.  Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).  "A court need not permit a case to

- 4 -

go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade Cty., 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### IV.

The following facts are undisputed by the parties.  The incident giving rise to the cause of action occurred in 2013 while Plaintiff was incarcerated at Coleman FCI.  Plaintiff's chronic, pre-existing condition, known as stricture disease,[2] required medical intervention during this time.  Plaintiff was provided

---

[2] Stricture disease is defined as scarring in the urethra that blocks the flow of urine.  See Motion at 2.

medical care at Coleman FCI and at outside providers, including a hospital located near Coleman FCI called the Leesburg Medical Center. The following dated-entries detail Plaintiff's medical care for his stricture disease:

**February 17**, Plaintiff underwent surgery for stricture disease at Leesburg Medical Center. Exh. 1, pp. 18-20.

**February 21**, Plaintiff released from Leesburg Medical Center. The discharge orders stated to "D/C [discontinue] Foley in two weeks," i.e. on March 7, 2013. The only medication prescribed was Cipro, an antibiotic. Newland endorsed the prescription. Exh. 1, pp. 21-22.

**February 25,** a prescription was written for Plaintiff for Acetaminophen/Codeine, i.e. Tylenol 3. The record shows that this order was reviewed and cosigned by Newland that same day. Exh. 1, p. 22.

**February 27**, Plaintiff went to Chronic Care Clinic and saw Newland. Newland observed good urine flow. Plaintiff requested medication for constipation "caused by his pain medication" and stated he was pain free "since he took his pain medication this morning." Newland renewed pain medication for another three days and prescribed Ibuprofen. Exh. 1, p. 23.

**March 4**, Plaintiff went to health services "in extreme pain" because his catheter wasn't draining. Southall's notes indicate that she "[a]ttempted to irrigate catheter without success." The PA log book stated that the catheter was to be removed that day. Southall removed the catheter because it was clogged. Plaintiff was transported to the "ER [at Leesburg Medical Center] via ambulance per Dr. Grajales. Two (2) Percocet administered per telephone order by Dr. Grajales." Exh. 1, p. 28; see also Decl. Southall. According to the

- 6 -

Complaint, Plaintiff alleges that Morales attempted to re-insert the catheter during this visit.  Complaint at 11.

**March 11**, Plaintiff was discharged from Leesburg Medical Center.  The discharge notes state "send home with antibiotics."  There were no orders for any pain medications. Newland signed this order.  Exh. 1, pp. 33-34.

**March 11**, medical notes from Coleman indicate that the "[c]atheter placement site appear[ed] clean and catheter bag appear[ed] to be draining with yellowish urine in [the] bag. PT has no complaints currently."  Newland reviewed the record the following day. Exh. 1, pp. 30-31.

**March 13**, Plaintiff requested and received a beside drainage bag for his catheter.  Exh. 1, p. 35.

**March 18**, Plaintiff required and received a refill on prescription Ibuprofen.  Exh. 1, p. 36.

**March 23**, Plaintiff saw Newland at Coleman's Health Services and complained to bladder spasms and penile bleeding. Plaintiff denied obstruction of his catheter and was "voiding clear yellow with no blood noted."  Newland prescribed a three day course of Acetaminophen/Codeine.  Exh. 1, pp. 38-39.

**March 29**, Plaintiff went on sick call complaining of pain and bleeding from penile area for two days.  His urinary bag had amber-colored urine.  No active bleeding was observed, but dried blood was noted on his undergarments.  Plaintiff was prescribed oxybutynin (a drug that reduces muscle spasms and urinary tract) and Ibuprofen.  Newland reviewed the report on April 2.  Exh. 1, p. 44.

**April 8**, Plaintiff went to sick call complaining of pain in his gall bladder and

testicle. No bleeding was found. He had no fever and no urinary retention. He was diagnosed with rebound tenderness from his surgery. Exh. 1, p. 45.

**April 10**, Plaintiff was taken to Health Services on an emergency basis complaining of blood in his urinary bag and pain in his public area. He was diagnosed with a possible urinary tract infection and prescribed a drug for that, as well as Ibuprofen, and a three day course of Acetaminophen/Codeine. Newland co-signed the report the same day. Exh. 1, pp. 47-48.

**April 16**, Plaintiff returned for a refill of his Ibuprofen and also received a three-day course of Acetaminophen/Codeine. Dr. Lee co-signed the report the same day. Exh. 1, pp. 50-51.

**April 22**, Plaintiff returned for another refill and was prescribed Ibuprofen, Oxybutynin, and a three-day course of Acetaminophen/Codeine. Dr. Cintron co-signed the report the same day. Exh. 1, pp. 52-53.

**April 30**, Plaintiff returned to Leesburg Medical for a pre-operative evaluation for replacement of his supra-pubic catheter. Newland cosigned the report on May 1. Exh. 1, pp. 58-61.

**May 2**, Plaintiff returned for a refill of his Ibuprofen. Exh. 1, p. 62.

**May 7,** Plaintiff saw Southall at Health Services complaining that his "urine look[ed] infected." Southall took a blood test and consulted with Newland, who advised "no antibiotics indicated at this time." Plaintiff requested that his Ibuprofen "be discontinued due to GI upset." Instead, Plaintiff was prescribed Acetaminophen for ten days. Newland cosigned the report on May 8, 2013. Exh. 1, pp. 65-66.

**May 10**, Plaintiff had pre-op blood work. Newland cosigned this report on the same day. Exh. 1, pp. 68-69.

**May 16**, Plaintiff went to Leesburg to have supra-pubic catheter exchanged and to have a Foley catheter placed.  Newland reviewed the record.  Exh. 1, p. 72.

**May 17**, Plaintiff returned to Coleman and had reddish colored urine and reported pain in his penis "as expected" from insertion of the Foley catheter.  Newland cosigned this report on the same day.  Exh. 1, p. 70.

**May 28,** Plaintiff went to Coleman's Health Services for renewal of his medications, including pain medications. He was prescribed Acetaminophen, Oxybutynin, and later (by Newland) Acetaminophen/Codeine.   Newland cosigned the report.  Exh. 1, pp. 75-76, 79, 82.

**June 3,** Plaintiff was seen by a urologist and advised to follow up with another visit on July 16.  The report was written by Newland. Exh. 1, p. 84.

**June 6,** Plaintiff's Foley catheter was "removed and ordered."  There was no bleeding and complications.  This report was cosigned by Newland on June 7.  Exh. 1, pp. 87-89.

**July 7,** Plaintiff's oxybutin was renewed.

**July 16**, Plaintiff's last visit to Health Services for treatment for his urethral stricture.  During this visit, Plaintiff had his supra-public catheter removed by a urologist.   Southall recorded the visit. Exh. 1, p. 92.  Plaintiff's next visit to sick call was on August 1 for treatment for injuries stemming from fight.

**V.**

In order to state a Bivens claim against a federal official in his individual capacity, a plaintiff must allege that: (1) a federal official acting under color of federal law; (2) deprived him of a right secured by the United States Constitution. Bivens, 403 U.S. at 388; Corr. Serv. Corp. v. Malekso, 534 U.S. 61, 71 (2001). Because claims under 42 U.S.C § 1983 and Bivens are similar, courts generally apply § 1983 law to Bivens cases. Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995). Similar to § 1983, "[i]t is well established that supervisory officials are not liable under [Bivens] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). "[T]he immunities provided federal officials in Bivens are coextensive with those provided state officials in § 1983 actions." Bolin v. Story, 225 F.3d 1234, 1241-42 (11th Cir. 2000).

Plaintiff's claims concerning his medical treatment at FCI Coleman invoke the protections of the Eighth Amendment. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted). In order to state a claim for a violation under the Eighth Amendment, a plaintiff-prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Hudson v. McMillan, 503 U.S. 1, 9 (1992) (opining

that a prisoner must demonstrate a "serious" medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care. . . ."). This showing requires a plaintiff to satisfy both an objective and a subjective inquiry. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).

First, a plaintiff must show that he had an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a

prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)). "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (citing Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion."). "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). For example, the Eleventh Circuit previously found "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance ... [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)).

Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

"Deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified." Harper v. Lawrence Cnty., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Taylor, 221 F.3d 1254, at 1259 (11th Cir. 2000). See also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Harris v. Coweta County, 21 F.3d 388, 393-394 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). A delay of even hours may be deliberate indifference given the "reason for the delay and the nature of the medical need." McElligott, 182 F.3d at 1255. However, "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds Hope v. Pelzar, 536 U.S. 730 (2002). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." Whitehead v.

Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (citations omitted).

**A. Eighth Amendment- deliberate indifference to serious medical need**

The medical defendants (Southall, Newland, and Morales) concede that Plaintiff's medical condition was sufficiently serious on March 4 when his catheter became clogged. Motion at 16-17. Defendants, however, dispute that any of Plaintiff's medical conditions thereafter constituted a serious medical need.

The Court finds based upon the record in this case that even a lay person would recognize that Plaintiff's medical conditions, related to his stricture disease, the placement of Foley catheters, the insertion of supra-public catheters, followed by occasional urinary tract infections, occasional penile bleeding, and almost constant pain from the date of the medical procedure in February of 2013 through July of 2013, constituted a serious medical condition. See Roy v. Corr. Med. Servs., 522 F. App'x 597, 600-601 (11th Cir. 2013) (acknowledging need to have catheter changed constituted serious medical condition). Having established the first prong, i.e., that Plaintiff's medical condition was sufficiently serious, the Court turns to address whether a genuine dispute of material fact exists regarding whether defendants acted with deliberate indifference to Plaintiff's serious medical conditions.

Defendants point to the Complaint and note that Plaintiff raises three issues concerning the provision of medical care: (1) Southall's premature removal of Plaintiff's catheter worsened his condition and then required the supra-public catheter; (2) delay and quality of medical care provided post-surgery, including the use of outdated catheter tubes, which caused Plaintiff multiple urinary tract infections and denial of Tylenol-3; and (3) improper pain management. See generally Complaint; Motion. After thorough review of the record, the Court determines that the record presents no genuine issue of material fact as to whether the medical defendants acted with deliberate indifference to Plaintiff's condition. Defendants are entitled to summary judgment in their favor.

Contrary to Plaintiff's assertions, the evidence of record shows that Southall's removal of Plaintiff's catheter on March 4 was not premature. See Decl. Southall at 1-2. Medical records document that Southall attempted to irrigate the catheter to no avail. Id. Southall explains that the PA log book showed that Plaintiff's catheter was to be removed on March 4. Accordingly, Southall removed Plaintiff's catheter. The record is entirely devoid of any evidence showing that Defendant Southall knew, or was aware, of a substantial risk of serious harm to Plaintiff due to her removal of the catheter. The record is devoid of any evidence showing that Southall disregarded that risk by failing to

take reasonable measures.  Moreover, while Plaintiff arguably suffered harm as a result of the removal, Plaintiff has failed to demonstrate that it was Southall's removal of the clogged catheter that caused him the harm.  To the contrary, the consequences of not removing a clogged catheter would likely have been far greater. After removal of the catheter, Plaintiff was transported without any delay by ambulance to Leesburg Medical Center and admitted there for approximately a week.

Regarding the provision of "out-dated catheters" and gloves, Southall explains that self-catheterization is a "clean procedure" that does not require surgical gloves.  Decl. Southall at 3. Additionally, Southall states that catheters were kept in the supply room at Coleman.  Southall did recall one incident when Plaintiff requested a new catheter in a certain size, but she did not have it immediately available.  So, Southall left to go to the supply room to get the catheter.  Southall states when she returned, Plaintiff was no longer waiting in line.  Instead, Plaintiff received the catheter the next day from a paramedic. Id.

There is no support in the record for Plaintiff's allegation that the medical defendants "shelved a 10-day order" from Leesburg Medical Center.  In other words, there is no evidence showing that Leesburg Medical required that Plaintiff's catheter be changed every ten days, nor is there any evidence that Plaintiff was not

provided catheters as frequently as he needed. Instead the record shows Plaintiff sought medical care and was provided care no less than twenty-four times during the six-month time period at issue.

The undisputed record also shows that the medical defendants repeatedly attempted to manage the pain Plaintiff experienced. Plaintiff was continually provided Tylenol-3 with codeine and when he believed that medicine caused constipation, then he was provided with Ibuprofen. Medical records reveal that there were medical visits where Plaintiff did not complain of pain and stated the medication as relieving his pain. There is no evidence in this record to support Plaintiff's unsupported allegation that Newland denied Plaintiff Tylenol-3 to treat his pain. Further, to the extent Plaintiff believed he should have been prescribed a narcotic to manage his pain, this allegation amounts to a difference of opinion with his medical providers, not deliberate indifference. Accordingly, Defendants Southall, Newland, and Morales are entitled to summary judgment as a matter of law.

### B. Supervisory Liability

Plaintiff identifies two administrators at FCI Coleman as Defendants: Defendants Jarvis, the Warden, and Perez, the Health Services Administrator. As previously stated, supervisory officials cannot be held liable under the theory of *respondeat superior*. <u>Supra</u> at 10. The Eleventh Circuit applies a three-prong test to determine a supervisor's liability:

> (1)   whether   the   supervisor's   failure   to
> adequately  train  and  supervise  subordinates
> constituted   deliberate   indifference   to   an
> inmate's   medical   needs;   (2)   whether   a
> reasonable person in the supervisor's position
> would understand that the failure to train and
> supervise        constituted        deliberate
> indifference; and (3) whether the supervisor's
> conduct   was   causally   related   to   the
> subordinate's constitutional violation.

Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995).

While the undisputed record confirms that neither Perez, the Health Services Administrator, nor Jarvis, the Warden, were personally involved with the provision of medical care to Plaintiff, see Decl. Perez at 3; Decl. Jarvis at 3, personal participation is merely one way to establish a causal connection between a named defendant and the alleged constitutional violation. Nevertheless, the Court will not analyze the level of participation of these supervisory defendants, or their respective causal connection, see Complaint at 21-22, 29, because the undisputed record confirms no violation of the Eighth Amendment occurred. The medical defendants did not act with deliberate indifference to Plaintiff's serious medical condition.

ACCORDINGLY, it is hereby **ORDERED:**

1.   The Clerk of Court is directed to edit the docket to reflect the correct spelling of "Moralez" name as "Morales."

2.   Defendants' motion for summary judgment (Doc. #27) is **GRANTED.**

3.   The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___22nd___ day of March, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record